Submitted on record January 10, accused permanently disbarred March 28, 1978

# In re Complaint as to the Conduct of
# ROSS McCORMICK, *Accused.*

576 P2d 371

No appearances.

PER CURIAM.

## PER CURIAM.

This is a disciplinary proceeding by the Oregon State Bar. The charges alleged in the complaint against the accused include: (1) the conversion to his own use of funds belonging to a client and deposited in the client's trust account; (2) the writing of an NSF check on his trust account and the later use of funds of another client to make that check "good"; and (3) the alteration of a deed after its execution by causing his secretary to change the name of the grantee.[1]

The Trial Board found the accused guilty of the first charge; that the bar failed to prove the second charge (although finding that the accused wrote the NSF check); and that the accused was not guilty of the third charge (although finding that the accused changed the grantee of the deed). It recommended that the accused be suspended from the practice of law for a period of one year, stating that the accused had been "extremely open and straight forward in his testimony"; that "his problems were of a temporary nature * * * caused by a combination of alcohol and marital problems"; that he "has the potential to be a capable and reliable member of the Oregon State Bar"; and that "no client suffered any financial loss due to the accused's conduct."

The Disciplinary Review Board agreed that the accused was guilty of the first charge, but disagreed with findings by the Trial Board on the remaining two charges, concluding that the issuance of the NSF check was unethical even if the accused did not use the funds of another client to make that check "good" and that the accused committed an unethical act when he

---

[1] The complaint also included three other charges which need not be discussed. The last of these was the often-used "catch-all" charge. The Trial Board's opinion says that this charge is "inappropriate in most disciplinary proceedings and particularly inappropriate here." The Disciplinary Review Board concluded that "the Trial Board erred in [that] comment and in its refusal to consider this charge" and asks for "a statement from [this] Court on this point." A resolution of this question is not necessary to our decision in this case and we do not believe that this case is an appropriate one for discussion of this question.

caused the alteration of the deed. It recommends that the accused be permanently disbarred because of his conversion of clients' funds, based upon the citation of previous decisions of this court.

Based upon our examination of the record we agree that the facts relating to this charge are as summarized in the decision of the Disciplinary Review Board as follows:

"Mrs. Burkhart purchased certain real property under a land sale contract (prepared by the accused), and an escrow account was established at a local savings and loan association. Later, Burkhart sold the purchasers' interest to Groshong for substantially more money than was owed by Burkhart. About 1968, Burkhart died, and in her will she left her interest in the property (i.e. the duty to pay the unpaid balance which was owed, and the right to receive the Groshong payments) to the Shriners Hospitals for Crippled Children. The accused probated Burkhart's estate.

"When the Groshongs became delinquent in their payments, the Shriners began to exert pressure for payment and the accused began to represent the Groshongs. In November, 1974, and again in January, 1975, the Shriners provided the accused with a specific pay-off figure, for by that time the entire unpaid balance was owed. On December 6, 1974, Groshongs gave the sum of $13,171.01 to the accused, with instructions to pay-off the unpaid balance of the contract as soon as possible, and the accused deposited that money in his trust account on the same day. It represented the amount of the unpaid balance at that time.

"For reasons variously attributed to his own lethargy, his absence from his office, and the problems he claimed to experience in acquiring specific pay-off information from the Shriners, the balance owed to the Shriners was not paid by the accused from his trust funds until August, 1975.

"In the meantime — specifically, in the months of June and July, 1975 — the accused withdrew a substantial portion of the Groshong money from his trust account for his own personal and totally unexplained

[ 696 ]

use. This was accomplished by several separate withdrawals, and not simply one single withdrawal. The total trust account showed a balance of only $6,631.00 in July, 1975.

"The conversion of this money was unknown to the Groshongs.

"The accused admitted the conversion, but attempted to justify his use of the money on the grounds that he anticipated a fee of $8,000.00 which was due [from a third party] and that he replenished the trust account and paid off the Shriners as soon as the fee was paid. When he finally paid the Shriners, he paid the sum of $14,062.47 to them which consisted of $13,171.01 previously paid to him by his clients, the Groshongs, and the balance represented accrued interest from December, 1974, which the accused paid from his own personal funds.

"The accused testified that he reasoned:

" 'Well, shoot, I'll do it this way, collect it [the $8,000 fee] and then take care of the thing.' He also said that his use of his clients money was due to his lack of income, which he related to excessive use of alcohol and marital problems. He also pointed out that, because he eventually repaid all of the money, no one was hurt."

■ Regardless of the disagreement between the Trial Board and the Disciplinary Review Board on the second and third charges, we agree with the Disciplinary Review Board in its recommendation that the accused be permanently disbarred because of his conversion of clients' funds. As recently held in *In re Pierson,* 280 Or 513, 571 P2d 907 (1977), a lawyer who converts to his own use money belonging to his clients, as in this case, may be disbarred even for a single conversion of such funds and even though full restitution has been made.

■ We also agree with the Disciplinary Review Board in its conclusion that the explanation and excuse by the accused for such misconduct was insufficient as a basis for the imposition of any lesser penalty than is

usual in such cases. *See* cases cited in *In re Pierson, supra,* at 518.

The accused is permanently disbarred from the practice of law in Oregon.